IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Steve Randall Smith, ) | C/A: 0:11-2395-JFA |
| ) | |
| Plaintiff ) | ORDER |
| ) | GRANTING IN PART |
| v. ) | AND DENYING IN PART |
| ) | DEFENDANTS' MOTION |
| Major N.C. Murphy; Captain Charles Grant; ) | FOR SUMMARY JUDGMENT |
| Deputy T.J. Murphy; and Alex Underwood, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff, Steve Randall Smith, was arrested for assault and battery on September 12, 2009 at the I-77 Speedway in Chester, South Carolina. In 2011, plaintiff initiated this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to false arrest without probable cause and constitutionally excessive force during the course of his arrest. He also asserted related state law claims against defendant Alex Underwood, Sheriff of Chester County. After discovery was concluded, the parties prevailed upon the court to stay this action so that the underlying state court criminal charges could be resolved. Finally, in August 2013, the plaintiff's state charges were dismissed.

Defendants have now moved for summary judgment on all of plaintiff's claims. For the reasons which follow, the court will grant summary judgment as to the defendants on the Fourth Amendment false arrest claim and the state law false arrest claim against Sheriff Underwood. The court will deny summary judgment as to the Fourth Amendment excessive

1

force claim and state law battery claim.

BACKGROUND

On the night of September 12, 2009, plaintiff was participating in the annual Shrine race at the I-77 Speedway, a dirt track raceway in Chester, South Carolina. According to the owner of the track, the Shrine Race is one of the bigger races held, with approximately 4,000 people in attendance. The gates open at 4:00 p.m. and the Shrine Race usually lasts until as late as one or two o'clock in the morning. Track policy permits spectators and crew members to bring an unlimited quantity of alcohol, as long as they do not bring liquor or glass-bottled beer. Traditionally during races, the Chester County Sheriff's Office has assigned police officers to the race track to provide security.

On the night in question, there were to be six or seven vehicle divisions for the main race and two qualifying races for each division. The prize money for the winner of plaintiff's division was $3,000. Defendants suggest that this prize for the Shrine Races is in the top percentage of dirt tracks in the relevant racing circuit.

Plaintiff and Chad Paxton were both participants in the Late Model division. During the qualifying race for their division (which determines positioning for the main race), plaintiff and Paxton were side-by-side leading the pack. When the two came out of a turn, Paxton used the front left fender of his car to push the right rear quarter panel of plaintiff's car. This caused plaintiff's car to spin and turn headfirst into the wall, which he struck. Although two wheels of plaintiff's car left the ground, the car did not flip. Because of the

damage to his car, plaintiff was unable to complete the qualifying race, thus placing him in a disadvantageous position for the main race in the event he was able to repair his car in time.

Significant for purposes of this case, plaintiff eventually pulled his damaged car into the pit area in the infield track, and began walking toward the scale area to confront Paxton. The events that occurred from this point forward are sharply disputed by the parties. Plaintiff essentially contends that the defendants—who were all uniformed law enforcement officers providing security for the race—dragged him down from behind and began beating him for no apparent reason. Plaintiff has secured the affidavits of numerous patrons who attended the race which are said to verify the plaintiff's version of events.

Defendants present a sharply contradictory series of events. They contend that around the time that plaintiff was walking directly toward Paxton's car, a track employee informed Deputy T.J. Murphy that plaintiff was "probably going to come up here (to the scale area) and cause a problem."[1] Deputy T.J. Murphy notified his father, Major N.C. Murphy, and at least one of the officers relayed the same information to defendant Charles Grant, a third law enforcement officer on the scene.[2] Upon receipt of this information and observing plaintiff walking towards Paxton, Deputy T.J. Murphy, in full police uniform, walked up to the

---

[1] The scale area is a part of the infield, where the cars are weighed.

[2] This racetrack employee was later identified as one "Charles Johnson." Plaintiff makes much of the fact that there was no racetrack employee by that name and suggests that Murphy has fabricated his encounter with Johnson in an effort to justify the arrest and scuffle that ensued. It appears to be undisputed, however, that Deputy T.J. Murphy notified the other officers that a racetrack employee had warned him of ensuing violence, and these officers reasonably acted upon information provided by their colleague. It is well settled that a law enforcement officer's *perceptions* of the objective facts of the incidents in question are relevant to the qualified immunity inquiry. *Roland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994).

3

plaintiff and told him that "they did not need any problems" and told the plaintiff to return to his pit area. Despite this command, plaintiff allegedly walked around Deputy T.J. Murphy and continued his approach toward Paxton's car. Murphy attempted to grab the plaintiff to prevent him from approaching Paxton's car, but plaintiff shrugged away from Deputy T.J. Murphy's grasp. According to the officers, plaintiff approached Paxton's window and appeared to grab Paxton's helmet and shake it. T.J. Murphy also thought that plaintiff looked as though he were about to strike Paxton. Murphy thereupon grabbed plaintiff from behind and pulled him away from Paxton's car. Murphy and Paxton then fell to the ground and as Murphy tried to get up and get a better position, plaintiff grabbed hold of both of Deputy T.J. Murphy's legs. At some point during the scuffle, Major Murphy and Captain Grant arrived and tried to help control and handcuff plaintiff. According to the officers, plaintiff actively resisted their attempts to cuff him, and kept trying to get up.

Eventually, plaintiff was handcuffed and cited for assault and battery and taken to the Chester County Detention Center ("CCDC"). As noted previously, the state criminal charges against the plaintiff were eventually dismissed. Following his release from CCDC, plaintiff was seen by a physician, who diagnosed plaintiff with a right elbow contusion and contusion on the ribs. Plaintiff contends that he additionally suffered two black eyes, abrasions, and "dismissed use of his right arm from hyper-extension of his elbow."

Plaintiff's complaint alleges Fourth Amendment violations under 42 U.S.C. § 1983 against deputies Charles Grant, N.C. Murphy, and T.J. Murphy, in their individual

capacities.[3] Plaintiff also asserts analogous state law claims for false arrest and battery against Sheriff Alex Underwood in his official capacity. The state law claims are brought pursuant to the South Carolina Tort Claims Act which expressly provides that the Sheriff is the proper defendant as to the state law claims.

On this record, the court determines that the defendants are all entitled to summary judgment on the federal and state false arrest claims, but not the federal excessive force and state battery claim.

## STANDARDS OF LAW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

---

[3] According to the defendants, the plaintiff has misidentified the father-son team that was included in the security detail. Defendants assert that the person referred to in the caption as "N.C. Murphy" is Major William Murphy and that the person referred to as "T.J. Murphy" is actually Torrey Murphy. Inasmuch as no effort has been made by the plaintiff to amend the complaint to conform to facts uncovered during discovery, the court will deal with the parties as alleged in the complaint.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 231–32, 129 S.Ct. 808 (2009). As explained by the Fourth Circuit in *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992), "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."

6

CLAIMS UNDER 42 U.S.C. § 1983

*The False Arrest Claim*

It is well settled that when analyzing § 1983 claims, the court is required to view the scene as perceived by the officers at the time, and not with the benefit of 20/20 hindsight. As indicated in the factual recitation above, the law enforcement officers assigned to provide security on the night of the race were faced with a potentially volatile situation. They were in charge of maintaining order for a crowd of approximately 4,000 people and it was reasonable for the officers to assume that some of the spectators had probably imbibed in alcohol on a Saturday night at a dirt racetrack. They saw one driver's car pushed to the wall, thereby causing significant damage, a not uncommon occurrence on dirt tracks where traction is poor and visibility is impaired due to dust. At least one representative of the racetrack had informed the officers that trouble was afoot.

On this record, the court determines that the law enforcement officers had probable cause to arrest the plaintiff for assault and battery. While the precise events following the collision on the track are sharply in dispute, it can be argued that plaintiff, by his own admission, was extremely upset after the accident and was quite obviously headed directly toward Paxton's car in an effort to voice his displeasure. Whether he was partially inside of Paxton's car as the officers contend, or merely outside of the car making menacing gestures, the officers had probable cause to arrest him for at least an assault. For this reason, the court will grant summary judgment to the defendants on the § 1983 false arrest claim.

Even if the officers did not have probable cause for an arrest, they are immune from suit under the facts alleged here because of qualified immunity. The court cannot say that the law enforcement officers violated the clearly established federal law in deciding to arrest the plaintiff for assault and battery.

*The Excessive Force Claim*

According to plaintiff's version of the events, even after he was subdued by the four officers participating in the arrest, the officers continued to pummel the plaintiff with their fists and shout obscenities towards him. The law is clearly established that an arrestee, after being clearly subdued and handcuffed, should not be subjected to continued blows by the fist. This being the case, the court cannot say that the defendants enjoy qualified immunity as to the excessive force claim.

One other issue of the excessive force claim bears mention. At the time of the events in question here (September 12, 2009), it was the law of the Fourth Circuit that, in a § 1983 case, if the plaintiff's injuries were said to be "de minimis," then the claim failed as a matter of law. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). Five months later, the United States Supreme Court, in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), rejected the Fourth Circuit's de minimis rule and held that even plaintiffs in § 1983 actions who receive only de minimis injuries could still maintain an action for excessive force. The defendants argued that *at the time of the arrest and ensuing scuffle*, the established law in the Fourth Circuit was that an arrestee who maintained only de minimis injuries could not survive summary judgment in

8

a § 1983 excessive force claim. And, because this court is required to view the law as it existed at the time of the event, this case must be decided upon pre-*Wilkins* law that prevailed in the Fourth Circuit at the time. *Hill v. Crumb*, 727 F.3d 312 (4th Cir. 2013) (holding that, in considering a defense of qualified immunity, *Wilkins* (and the abrogation of the de minimis injury standard) does not apply retroactively to allegedly tortuous conduct that occurred prior to that decision.) *Id*. at 322.

Defendants contend that the plaintiff's injuries are "classic de minimis injuries." The court disagrees. Viewed in the light most favorable to the plaintiff, as the court must view them at this juncture, the facts indicate that plaintiff's injuries, particularly regarding his elbow dysfunction, constitute more than de minimis injury so as to survive summary judgment.

## THE STATE LAW CLAIMS

Plaintiff has asserted state law claims against the Sheriff in his official capacity, for the actions of his deputies allegedly committing a battery and false arrest on the night in question. Inasmuch as the court has determined that the officers did, in fact, have probable cause for the arrest of the plaintiff, the state false arrest claim must fail. The state law battery claim, which is roughly parallel to the federal excessive force claim, shall survive summary judgment.

For all the foregoing reasons, the defendants' motion for summary judgment (ECF No. 72) is granted in part and denied in part as set out herein.

IT IS SO ORDERED.

August 29, 2014  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

10